Commonwealth v. Baynton.

---

*282]                    *COMMONWEALTH v. BAYNTON et al.

Sureties on official bond.

Where an officer is elected annually, and gives a new bond, on a re-election, his sureties are only responsible for a deficit occurring during the year.[1]

DEBT, on the official bond of Peter Baynton, as state treasurer, dated the 11th of January 1797, against him, and his sureties, David Lenox, William Hall and Joseph Bullock.   It was admitted, that there was a considerable balance due from Baynton to the state ; but the defence taken for his sureties was on two distinct grounds : 1st. That the treasurer is elected annually ; he is required to give bond on every election ; and that his sureties in the present bond are only liable for any deficit actually incurred during the year, commencing in January 1797, and ending in January 1798. 2d. That by the conduct of the legislature, in frequent subsequent reappointments of Boynton, as treasurer ; and by the conduct of the accounting officers, who had the legal examination and control of his accounts ; the sureties were virtually discharged.   On the first point, were cited, Const.

---

[1] Farrar v. United States, 5 Pet. 374 ; United States v. Boyd, 15 Id. 187 ; United States v. Linn, 1 How. 104 ; United States v. Irving, Id. 250 ; Harris v. Babbitt, 4 Dill. 185 ; Bissell v. Saxton, 66 N. Y. 55.   The presumption however, is, that a balance due from an officer at the time of his re-appointment, was then in his hands, and his sureties are responsible for its due application ; but they may relieve themselves, by showing that he was in fact a defaulter when they became his sureties.   Bruce v. United States, 17 How. 437.   See Wilson v. School Directors, 2 Am. L. Reg. 123.

Commonwealth v. Baynton.

Penn. art. VI., § 5 ; 3 Dall. Laws, 221 ; 2 Ibid. 756 ; 2 Saund. 411 ; Styl. 18 ; Alcyn. 10 ; Park. 277 ; Leon. 240 ; Moore 126, 274 ; 2 Vern. 518. On the second point, there was a general reference to the acts of assembly, and to the public records, in relation to the state treasurer's accounts, and to the repeated elections of Mr. Baynton ; and the following authorities were cited: Co. Litt. 206–7 ;. 1 Roll. Abr. 457, 463 ; 2 Ves., jr., 540 ; 4 Ibid. 824 ; 2 P. Wms. 542 ; 1 T. R. 291 ; 2 Bos. & Pul. 62 ; 3 Bro. Ch. 1 ; 3 Dall. Laws, 132 ; Comb. 464 ; Vern. 24 ; 2 Brownl. 107 ; 12 Mod. 559.

On the part of the *Commonwealth,* a strict scrutiny was made into the bank deposits and drafts of Baynton, to ascertain the period when the deficit. arose, and its subsequent fluctuations. And it was contended : 1st. That from the nature and extent of the obligation, the sureties were bound to indemnify the state, unless they could show that there was an express release ; that the recovery was barred by lapse of time ; or that a settlement with the principal had extinguished the claim upon the sureties. 2d. That the indemnity of the bond extended to the general duty of the treasurer, as well as to his fidelity in pecuniary transactions : and as soon as he had ceased to make the Bank of Pennsylvania the depositary of the public money ; or as soon as a false estimate of accounts was exhibited, the bond was forfeited. 3d. That from the very nature of the indemnity, its obligation is co-extensive with the continuance of the person in the office ; and the only questions are, whether the sureties could so engage, and whether they have so engaged ? That on the facts (even supposing the indemnity of the bond to be limited, by an implied connection with the annual tenure of the office), there was a deficit of inactive public money at the end of *the year 1798, not found in the bank, nor accounted for in any public deposit or application. On these several points the following [*283 authorities were cited : 3 Dall. Laws, 132 ; 4 Ibid. 301 ; 4 Ves., jr., 829 ; Sayer 115 ; 2 P. Wms. 287 ; 1 Bos. & Pul. 419, 422 ; 3 Dall. Laws, 222, § 9, 10 ; 2 Ibid. 753, § 6, 7 ; 6 State Laws, 590 ; 3 Dall. 500 ; 2 Saund. 411 ; 1 T. R. 295, 293 ; Bunb. 275, 337 ; Hardr. 424 ; 3 Leon. 240 ; Moore 126, 274 ; 2 Chan. Ca. 84 ; Show. 216.

THE COURT, in the charge directed the jury, in point of law, to confine the responsibility of the sureties, to a deficit occurring during the year ensuing the date of the bond. But if, from the evidence, they were satisfied that there was a deficit, during that year, they thought, that a verdict should be in favor of the commonwealth for the amount,(*a*) verdict for the defendants.(*b*)

*McKean,* (attorney-general) and *Dallas* for the commonwealth.
*Rawle,* for the defendants.

---

(*a*) The condition of a bond, reciting that the defendants had agreed with the plaintiffs to collect their revenues "from time to time, for twelve months," and stipulating that "at all times thereafter, during the continuance of such his employment, and for so long as he should continue to be employed" he would justly account and obey orders, &c., confines the obligation to the period of twelve months mentioned in the recital. Liverpool Water Works *v.* Atkinson, 6 East 507.[1]

(*b*) It may be proper to observe, that Mr. Baynton did not appear, nor take defence,

[1] But see Walters' Appeal, 10 W. N. C. 146.

---

in this suit: the proceedings to recover from him having been instituted on the settlement of the comptroller.

